UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TRAVIS LEE CONN,

                Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

Case No. 3:15-cv-05086-KLS

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On February 8, 2013, plaintiff filed an application for disability insurance and another one for SSI benefits, alleging in both applications he became disabled beginning December 18, 2012. *See* Dkt. 13, Administrative Record ("AR") 35. Both applications were denied upon initial administrative review on June 19, 2013, and on reconsideration on October 14, 2013. *See id.* A hearing was held before an administrative law judge ("ALJ") on April 4, 2014, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 61-116.

ORDER - 1

In a decision dated June 16, 2014, the ALJ determined plaintiff to be not disabled. *See* AR 32-58. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 12, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481. On February 12, 2015, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on April 24, 2015. *See* Dkt. 13. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or alternatively for further administrative proceedings, because the ALJ erred: (1) in evaluating the opinion of Brett Trowbridge, Ph.D.; (2) in assessing plaintiff's residual functional capacity ("RFC"); and (3) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the Court disagrees that the ALJ erred as alleged, and therefore finds that defendant's decision should be affirmed.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (*citing Brawner*

ORDER - 2

*v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (*quoting Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I.   The ALJ's Evaluation of Dr. Trowbridge's Opinion

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v.*

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

*Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

ORDER - 4

inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

The ALJ in this case found that in light of all of his medical impairments, including his substance use disorders, plaintiff had an RFC in which he "**cannot tolerate interactions with the general public as part of his job duties, and would be off-task more than 15 percent of the workday**." AR 41 (emphasis in original). The ALJ based this finding at least in part on the following evaluation of the opinion evidence from Dr. Trowbridge:

> The claimant presented to Brett Trowbridge, PhD, for a psychiatric consultative examination on January 17, 2013. Ex. 10F/3. Dr. Trowbridge wrote that the claimant had a Beck Depression Inventory score of 42, indicating serious depression, and his scores on Rey and Trail Making A & B were all indicative of adequate effort. On mental status exam, the claimant had appearance within normal limits and was cooperative, but had depressed mood and flat affect. Ex. 10F/3. Based on the exam, Dr. Trowbridge diagnosed impairments including major depressive disorder, post-traumatic stress disorder, opioid dependence, and rule out diagnosis of personality disorder. Ex. 10F/2.
>
> . . . Dr. Trowbridge opined that the claimant's mental health symptoms would cause marked limitation in his ability to perform basic work-related activities on a regular and consistent basis. Dr. Trowbridge is a medical expert whose opinions are based on his direct observations of the claimant during the consultative examination, as well as a review of the claimant's medical records. Dr. Trowbridge's opinion is consistent with the treatment record regarding the claimant's significant impairment in functioning when engaged in substance abuse. Based on the foregoing, I afford significant weight to this opinion in the context of the claimant's substance abuse. Dr. Trowbridge's opinion supports the finding that with ongoing substance abuse, the claimant would be off task more than 15 percent of the workday secondary to exacerbated symptoms. However, Dr. Trowbridge's opinions are also based on the claimant's subjective complaints, as well as the claimant's self-reported

ORDER - 5

>sobriety from substance abuse. Importantly, the claimant testified at the hearing that he continued to engage in substance abuse through April 2013. He continues to use marijuana regularly. Accordingly, Dr. Trowbridge's opinion regarding the claimant's impaired functional limitations only accurately describe the claimant's level of functioning when engaged in substance abuse, including dishonest interactions in order to obtain narcotics. I give no weight to Dr. Trowbridge's opinion that the claimant's difficulties, including a marked limitation in the ability to learn new tasks, are not the result of the claimant's substance abuse issues. For example, apparently in the absence of substance abuse, the claimant clearly has been able to learn complex tasks, such as metalworking.

AR 42-43. The ALJ then determined that considering plaintiff's age, education, work experience, and RFC based on all of his impairments, including his substance use disorders, he would not be able to perform any work. *See* AR 43.

The ALJ, however, went on to find that if plaintiff stopped his substance use, he would have an RFC in which he "**cannot tolerate interactions with the general public as part of his job duties**," but "**would be off-task under 5% of the workday**." AR 45 (emphasis in original). In so finding, the ALJ again addressed the opinion evidence from Dr. Trowbridge:

>. . . as discussed above, Dr. Trowbridge found that that [sic] the claimant's mental health symptoms would cause limitation in his ability to engage in basic work-related activities on a regular and consistent basis. Given the claimant's false statements and ongoing substance abuse during the time of the consultative examination, Dr. Trowbridge's opinion is consistent with the record only to the extent that it describes the claimant's functioning when engaged in substance abuse. I give little weight to Dr. Trowbridge's opinion with respect to the claimant's functioning and limitations in the absence of substance abuse.

AR 48. This time, the ALJ determined that if plaintiff stopped his substance use, considering his age, education, work experience, and RFC, there were other jobs plaintiff could do. *See* AR 51.

Plaintiff argues the ALJ erred in discounting Dr. Trowbridge's opinion on the basis that it was tainted by his false statements and ongoing substance abuse. The Court disagrees, as the overall evidence in the record supports the ALJ here. At the time of the evaluation, plaintiff told

ORDER - 6

Dr. Trowbridge that "circa 1998" he "developed an addiction to painkillers," that he had "problems with that for several years" and that "[l]ast week" he went through 12 weeks of outpatient substance abuse treatment, but that he also had "relapsed about three weeks ago briefly for three days before he stopped usin[g] them." AR 722, 736.

In terms of substance use disorders, Dr. Trowbridge diagnosed plaintiff with "opioid dependence, in remission unmtil [sic] recently." AR 723, 737. Dr. Trowbridge also opined that plaintiff's other current mental impairments were not primarily the result of substance use within the past 60 days, that those impairments would persist following 60 days of sobriety and that no chemical dependency assessment or treatment was recommended. *See* AR 738. At the hearing, however, plaintiff admitted that he "did a lot of lying to doctors," and that he last used narcotics or opiates on April 13, 2013. AR 77 (further testifying that he "got nine days until a year" and was "pretty happy about that"). Although plaintiff went on to testify that he had gotten himself "clean" before his last admitted use in April 2013, he also testified that on June 13, 2013, he was admitted for 60 days of inpatient opiate dependency treatment. AR 78.

Plaintiff's testimony that he was admitted for inpatient opiate dependency treatment some two months later in June 2013, strongly indicates he had ongoing substance abuse issues despite his testimony that he had gotten clean prior to April 2013, but as this latter testimony implies he merely relapsed on the 13th of that month. The admitted relapse and subsequent inpatient opiate dependency treatment also call into question plaintiff's prior report to Dr. Trowbridge that three days of use three weeks prior to that evaluation was itself merely a relapse. Other evidence in the record supports this inference. For example, in mid-August 2013, one treating medical source reported that plaintiff had "a very strong history of opiate dependence," that he "just finished" 60 days of "detox" treatment "for opiate addiction," and that he "has been off of opiates *for the past*

ORDER - 7

*2 months*" and was "doing well." AR 767 (emphasis added).

As noted by the ALJ, furthermore, and again as admitted by plaintiff at the hearing, the record contains strong evidence of dishonesty on plaintiff's part, particularly in regard to dealing with medical providers:

> Notably, there are multiple aspects of the record that reflect negatively on the credibility of the claimant's statements. The record indicates that the claimant has been frequently dishonest with examining and treating medical clinicians. The claimant alleged the existence of a twin brother, when he has none, admitted at the hearing that he gave a false name to a hospital, and testified that he had been convicted of prescription fraud. The claimant testified to "recollection issues" and testified that he has had his marijuana license renewed three times, although he told one provider that he only used marijuana while in high school. Ex. 3F/47. Other examining and treating medical clinicians have noted that the claimant has a "history of lying to get his way" and lies to obtain controlled substances. The record also indicates that the claimant was untruthful to medical clinicians about being diagnosed with cancer and having only eight months left to live. Differently, the record demonstrates that the claimant has never been diagnosed with cancer. At the hearing, the claimant alleged that his friend, who is a veterinarian, thought he had cancer. Although the claimant may have fleetingly had concerns based on his friend's opinion, it is not credible, in light of the claimant's intelligence, that the claimant believed he had actually been diagnosed with cancer and had been given only months to live. It is not credible that, if he truly believed he had this condition, he would not have sought confirmation or treatment. . . .

AR 47-48. Plaintiff does not challenge the ALJ's findings concerning his credibility. Given those credibility issues, the apparent ongoing substance abuse at least through mid-June 2013, when he entered inpatient detox treatment, and the fact that Dr. Trowbridge was not fully aware of either the credibility issues or the ongoing substance abuse, the ALJ was not remiss in discounting his opinion for these reasons. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based "to a large extent" on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion.") (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)); *Andrews v. Shalala*, 53 F.3d 1035, 1045 (9th Cir. 1995) (examining psychologist's conclusions

ORDER - 8

properly rejected as being "unreliable" in part due to claimant's "contemporaneous substance abuse" of which that medical source was not fully aware).

Plaintiff argues that because Dr. Trowbridge also relied on other sources of information, such as the psychological testing and mental status examination he performed, and considered as well the role that substance abuse would play in plaintiff's functioning, it was improper for the ALJ to rely on plaintiff's history of dishonesty and other evidence of ongoing substance abuse to reject his opinion. But the psychological testing and mental status examination findings Dr. Trowbridge obtained were for the most part unremarkable. *See* AR 723-24, 737, 739. It is true that plaintiff's score on the Beck Depression Inventory indicated he was "seriously depressed" (AR 723, 737), but that test was based on plaintiff's responses and thus reflects his subjective interpretation of his symptoms. *See Abrams v. Colvin*, 2015 WL 1649039, at *4 (E.D. Ky. 2015); *Thompson v. Colvin*, 2014 WL 4722286, at *4 (D. Or. 2014).

Given the credibility issues noted by the ALJ and discussed above, and lack of objective clinical evidence that would support the level of functional limitation Dr. Trowbridge assessed, it was not unreasonable for the ALJ to assume Dr. Trowbridge relied largely on what plaintiff told him and to discount those limitations on this basis. Plaintiff argues the ALJ's findings here are not reasonable, since Dr. Trowbridge "found no malingering as one might otherwise expect if substance abuse were an underlying force guiding the test results." Dkt. 19, p. 7. But what Dr. Trowbridge actually stated was that the testing suggested he was "not malingering (*borderline*)," indicating that there were possible credibility issues or at the very least that the results bordered on a showing of malingering. AR 723, 737 (emphasis added).

In any event, it is the sole duty of the ALJ to resolve issues of credibility, and given the evidence in the record of plaintiff's history of dishonesty and ongoing substance abuse to which

ORDER - 9

Dr. Trowbridge seems to have been mostly unaware, the ALJ's reliance on that evidence to discount Dr. Trowbridge's opinion was not irrational. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Likewise, the ALJ did not err in rejecting the low global assessment of functioning ("GAF") score Dr. Trowbridge assigned plaintiff (*see* AR 738), given that a GAF score is "a subjective determination" based on the individual's own statements concerning his or her functioning, and as the ALJ found plaintiff's statements in that regard to be "less than fully credible" (AR 50). *See Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007).

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those

ORDER - 10

limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

As noted above, the ALJ found that in light of all of his medical impairments, including his substance use disorders, plaintiff had an RFC in which he could not tolerate interactions with the general public, and would be off-task more than 15 percent of the workday. *See* AR 41. The Court agrees with plaintiff that because she failed to explain how she determined plaintiff would be off-task more than 15 percent of the workday or point to any evidence in the record in support of that determination, she erred *See* 96-8p, 1996 WL 374184, at *7 (ALJ must discuss why claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence"). The Court finds this error to be harmless, however, given that the ALJ found plaintiff would be unable to perform any work when considering his substance use disorders.[2] *See* AR 43; *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

Similarly, the Court finds the ALJ erred in failing to explain or point to evidence in the record to support her determination that plaintiff would be off-task less than five percent of the workday if plaintiff stopped his substance abuse. *See* AR 45. Again, though, the Court finds this error to be harmless. This is because the only evidence of being off-task more than five percent

---

[2] It should be noted, furthermore, that the vocational expert testified at the hearing that "[t]raditionally, employers will tolerate about 15 to 20 percent being off task." AR 113.

ORDER - 11

of the workday comes from Dr. Trowbridge, whose opinion the ALJ did not err in rejecting. *See* AR 738 (finding marked limitation in ability to perform activities within schedule, maintain regular attendance and be punctual within customary tolerances without special supervision). On the other hand, the two state agency consultative psychologists who, unlike Dr. Trowbridge, had the opportunity to review the record, found plaintiff to be not significantly limited in these areas, as well as in the ability to sustain an ordinary routine, all of which actually would indicate an ability to remain on task for the full workday. *See* AR 156-57, 173-74. That is, while the ALJ did err here, that error was in plaintiff's favor. *See Stout*, 454 at 1055; *Parra*, 481 F.3d at 747.

III.  The ALJ's Determination at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity if plaintiff stopped his substance abuse. *See* AR 111-14. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. *See id*. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy if he stopped his substance abuse. *See* AR 51. Although plaintiff challenges this determination based on the ALJ's errors in evaluating Dr. Trowbridge's opinion and in assessing plaintiff's RFC, as just discussed the ALJ did not err in discounting Dr. Trowbridge's opinion and while she did err with respect to plaintiff's RFC assessment, those errors were harmless.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 5th day of October, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 13